UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| GILDA BAKER, *et al.*, | No. C 13-00073 MEJ |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | [Dkt Nos. 36, 37] |
| STATE OF CALIFORNIA HIGHWAY PATROL, *et al*., | |
| Defendants. | |

# I. INTRODUCTION

On January 7, 2013, Plaintiff Gilda Baker filed this action pro se against Defendants State of California Highway Patrol ("CHP"), CHP Chief Paul Fontana, and CHP Chief Teresa Becher (collectively, the State Defendants), as well as Defendants City of Oakland, and Oakland Police Department ("OPD") Chief Howard Jordan (collectively, the Oakland Defendants). Compl., Dkt. No. 1. Ms. Baker asserts claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 stemming from the circumstances leading to the death of her son, Diallo Sekou Neal, Sr., and the investigations of his death by California and Oakland law enforcement agencies. Sec. Am. Compl. ("SAC"), Dkt. No. ¶ 29. After amending her initial Complaint, on April 16, 2013, Ms. Baker filed the operative Second Amended Complaint.[1] *Id*. In her pleading, Ms. Baker alleges that on October 10, 2005, while Diallo and his friend were riding motorcycles, a CHP motorcycle officer chased and struck Diallo's

---

[1] Although Ms. Baker seeks to assert claims in her own capacity, she also seeks to assert claims on behalf of the Estate of Diallo Sekou Neal, Sr., and Diallo's children as successors in interest to their father. SAC ¶ 8. However, in response to Defendants' motions, on July 25, 2013, Ms. Baker submitted a letter to the Court indicating that she only seeks to assert personal claims and no longer intends to assert claims on behalf of the Estate or her grandchildren. Dkt. No. 47. While the Court discusses this issue in greater detail below, the Court grants Ms. Baker's request to proceed solely on her personal claims.

motorcycle, causing him to crash and sustain fatal injuries. *Id*. ¶ 25. Ms. Baker alleges that despite her persistent pleas to the CHP and the OPD to investigate the events leading up to her son's death, CHP and OPD officers failed to undertake an investigation and, instead, conspired to cover up the true cause of the accident. *Id*. at 9-12. Based on these allegations, Ms. Baker asserts that Defendants: (1) violated Diallo's Fourth Amendment right to be free from unreasonable seizure (Claim One - § 1983 claim); (2) violated her and Diallo's children's right under the Fourteenth Amendment to enjoy continued family relations (Claim Two - § 1983 claim); (3) failed to adequately train, supervise, and discipline their officers and were deliberately indifferent to Plaintiffs' rights (Claim Three - *Monell* claim); and (4) conspired to cause Diallo's death and to deprive Plaintiffs' of their rights (Claim Four - § 1985 claim ). *Id*. at 12-13.

On May 15, 2013, the State Defendants and the Oakland Defendants filed Motions to Dismiss the Second Amended Complaint. Dkt. Nos. 36 (State Mot.), 37 (Oak. Mot.). On July 1, 2013, Ms. Baker filed her Opposition to both Motions (Dkt. No. 40), to which the State Defendants and the Oakland Defendants filed replies. Dkt. Nos. 43 (Oak. Reply), 46 (State Reply). On August 1, 2013, the Court held a hearing on this matter. After carefully considering the parties' arguments and the controlling legal authorities, the Court **GRANTS** Defendants' Motions and **DISMISSES** this action.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts, taken from Ms. Baker's Second Amended Complaint, and supplemented by documents attached as exhibits to Ms. Baker's initial Complaint, are as follows.

Ms. Baker is the mother of decedent Diallo Sekou Neal, Sr. SAC ¶ 8. On October 10, 2005, Diallo left home with a friend, Darryl Langston. *Id*. ¶ 22. Both Diallo and Mr. Langston were riding Harley Davidson motorcycles. *Id*. According to Ms. Baker, at some point a CHP officer began pursuing Diallo on his motorcycle through a residential neighborhood in Oakland. *Id*. ¶¶ 23-24. During the pursuit, the CHP officer struck Diallo's motorcycle, causing Diallo to lose control and to crash into a concrete bus stop bench, bus stop pole, and telephone booth. *Id*. ¶ 25. The CHP officer fled the scene of the accident, leaving Diallo on the ground. *Id*. ¶ 26. Diallo was taken to the hospital, where he died that night as a result of his injuries. *Id*. ¶¶ 29, 31; Compl. Dkt. No. 1 at 28-

29.     Sometime thereafter, Ms. Baker called the OPD and spoke with an officer in the Internal Affairs Department. *Id.* ¶ 34. The officer told Ms. Baker that the CHP was not at the scene of the accident. *Id.* Ms. Baker asked the officer if he would contact Mr. Langston. *Id.* The officer told Ms. Baker that Mr. Langston did not have to come forward if he did not want to. *Id.* ¶ 35.

On December 5, 2005, Ms. Baker went to the CHP office in Oakland and spoke with Officer J.P. Frazier, who told her that "Officer Eddy knows about this, but he is not the guy you're looking for." *Id.* ¶ 36. Ms. Baker was told someone would contact her. *Id.* When she did not hear back, she contacted CHP and spoke with Officer Wong. *Id.* ¶ 38. Ms. Baker told Ofc. Wong about Mr. Langston; Ofc. Wong, however, told Ms. Baker that CHP was not at the scene of the accident. *Id.*.

During this time, an Oakland law firm was notified regarding the accident and hired a private investigator who interviewed witnesses and recorded footage of the area and Diallo's motorcycle. *Id.* ¶¶ 32-33. The private investigator concluded his investigation and authored a memorandum summarizing his findings in December 2005. Compl., Dkt. No. 1-1 at 12-27.

On October 12, 2005, Ms. Baker filed a Victim Application for Crime Victim Compensation. SAC ¶ 42; Compl., Dkt. No. 1-1 at 34-35. The Victim Compensation and Government Claims Board denied Ms. Baker's Application on February 8, 2006, on the ground that Diallo "was riding his motorcycle at an unsafe speed causing the collision." Compl., Dkt. No. 1 at 36-37.

Thereafter, Ms. Baker began writing to law enforcement agencies regarding her concerns over the investigation into her son's death. SAC ¶ 40. On May 3, 2010, Ms. Baker sent a letter to then-California Attorney General Jerry Brown, wherein she stated that "The City of Oakland, Police Department did not conduct an investigation and told me my son's death was an accident. Not that . . . an officer had caused my son's accident." Compl., Dkt. No. 1-1 at 42-43; SAC ¶ 46. On May 26, 2010, a representative from California's Department of Justice's Public Inquiry Unit sent Ms. Baker a letter indicating that she should first direct her complaint to the local law enforcement agency. Compl., Dkt. No. 1-1 at 44-45.

On May 12, 2010, Ms. Baker sent a letter to United States Attorney General Eric Holder, wherein she stated that OPD had not conducted an investigation into Diallo's death. Compl., Dkt.

3

No. 1-1 at 46-47; SAC ¶ 47. A representative from the U.S. Department of Justice wrote Ms. Baker a letter explaining:

> [The Criminal Section of the Civil Rights Division has] carefully reviewed the information provided by you and determined that we have insufficient information as to the identity of the CHP office based on the descriptions in the investigation to determine whether a prosecutable violation of the federal criminal civil rights statutes exists in this matter. In reviewing the Aardvarks Investigation Report and the City of Oakland Police Report, the coroner indicated at the scene that Diallo died as the result of blunt force traumatic injuries to the head. The investigations also revealed that Diallo's cycle was struck by another civilian cyclist driving a Harley Davidson who had fled the scene. Accordingly, we are unable to authorize a federal investigation into your complaint.

Compl., Dkt. No. 1-2 at 5-6; SAC ¶ 47.

Thereafter, at some point before May 2010, Plaintiff contacted OPD. *See* Compl., Dkt. 1-1 at 38; SAC ¶ 45. An officer from OPD's Internal Affairs Division sent Plaintiff a letter indicating that her complaint had been assigned a case number. *Id*.

On June 8, 2010, Plaintiff filed a Complaint with the OPD Citizens Police Review Board. SAC ¶ 43; Compl., Dkt. No. 1-1 at 48-49. Thereafter, on July 4, 2010, she wrote a letter to the CHP Office of Internal Affairs. Compl., Dkt. No. 1-1 at 50-51. In that letter, Plaintiff stated:

> The City of Oakland, Police Department did not conduct an investigation and told me my son's death was an accident. The California Highway Patrol nor the City of Oakland did no investigation into any of the statements given by witnesses. There was no investigation of any of the circumstances of the case.

Compl., Dkt. No. 1-1 at 50-51. On July 19, 2010, Capt. E.J. Barkley of CHP's Office of Internal Affairs sent Plaintiff a letter, stating:

> A member of my staff confirmed this case was previously investigated by members of the Oakland Area office. Nevertheless, I have asked the Golden Gate Division Commander, Chief T.M. Becher, to initiate a review into your concerns to determine what, if any, improprieties exist. . . . . In order to assist you, I have forwarded your concerns to the Oakland Police Department for their review and appropriate action.

Compl., Dkt. No. 1-2 at 2.

On August 25, 2010, Patrick Caceres, acting manager of Oakland's Citizens' Police Review Board, wrote to Ms. Baker to inform her that the Board had received her Complaint and an investigator had been assigned to review it. Compl., Dkt. No. 1-2 at 3.

On September 29, 2010, Danielle Outlaw, Lieutenant of Police from the OPD's Internal Affairs Division, wrote Ms. Baker a letter informing her that the investigation into her allegations had been completed and that, "The Internal Affairs Division has documented and worked toward resolving your complaint. The circumstances will be further reviewed in order to improve our future service to the community." Compl., Dkt. No. 1-2 at 4; SAC ¶ 45.

In October 2010, November 2010, and January 2011, Ms. Baker and the investigator assigned by the Citizens' Police Review Board, Reygan Harmon, exchanged email messages about information Ms. Baker could provide about Diallo's accident. Compl., Dkt. No. 1-2 at 11-16.

On March 23, 2011, Ms. Baker filed a Complaint with the City of Oakland, along with supporting documents. Compl., Dkt. No. 1-2 at 17-20; SAC ¶ 48. On March 25, 2011, Oakland denied Ms. Baker's claim as untimely "because it was not presented within six months after the event or occurrence," as required by California Government Code sections 901 and 911.2. Compl., Dkt. No. 1-2 at 21.

On May 12, 2011, the Citizens' Police Review Board sent Ms. Baker a Notice to Complainant of Proposed Administrative Closure. Compl., Dkt. No. 1-2 at 23-24. The Notice informed Ms. Baker that:

> The CPRB staff will make the following recommendation regarding the allegation(s) of your complaint:
>
>   1) MOR 314.39 - Performance of Duty - Search and Seizure - You alleged that officers covered up the incident on behalf of CHP and failed to properly investigate the death of your son, Diallo Neal. - **Unfounded:** The investigation revealed that the act or acts complained of did not occur.

*Id.*

Thereafter, on September 7, 2011, Ms. Baker wrote to the Alameda County District Attorney's Office, requesting that it investigate her son's death. SAC ¶ 49; Compl., Dkt. No. 1-2 at 27. In September 2012, a lieutenant from the Alameda County District Attorney's Office informed Ms. Baker that the investigation was the responsibility of the OPD. SAC ¶ 49; Compl., Dkt. No. 1-2 at 28.

Ms. Baker alleges that despite the repeated representations that CHP was not involved with

5

1 Diallo's death, she discovered a CHP report inside an OPD report regarding the accident. SAC ¶ 39.
2 She avers that in that report, Ofc. Wong slandered her and falsely reported that she told him she knew
3 who was with Diallo when he crashed. *Id*.

4     Subsequently, on January 7, 2013, Ms. Baker initiated this lawsuit. Dkt. No. 1. After the
5 State and Oakland Defendants filed motions to dismiss in late February 2013, Ms. Baker filed an
6 Amended Complaint. Dkt. No. 24. In light of the Amended Complaint, the Court denied
7 Defendants' motions without prejudice. Dkt. No. 26. In its Order, the Court further found that
8 because the allegations in Ms. Baker's Amended Complaint were unclear and did not conform to
9 Federal Rule of Civil Procedure 8(a)'s pleading requirements, the Court would dismiss Ms. Baker's
10 Amended Complaint without prejudice. *Id*. On April 16, 2013, Ms. Baker filed her Second
11 Amended Complaint. Dkt. No. 19.

12     The State and Oakland Defendants now move to dismiss Ms. Baker's action. The State
13 Defendants argue that the Eleventh Amendment bars Ms. Baker's claims against them, mandating
14 dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).
15 Both the State Defendants and the Oakland Defendants argue that Ms. Baker lacks standing to assert
16 claims on behalf of Diallo's Estate or his successors in interest, and that Ms. Baker's claims against
17 them are untimely and fail as a matter of law, subjecting them to dismissal pursuant to Rule 12(b)(6).

### III. LEGAL STANDARD

**A. Motion to Dismiss for Lack of Jurisdiction**

20     Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power
21 authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v.*
22 *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted). Accordingly,
23 "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing
24 the contrary rests upon the party asserting jurisdiction." *Id*.

25     Rule 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter
26 jurisdiction. A party moving to dismiss pursuant to Rule 12(b)(1) may make a facial or a factual
27 attack on jurisdiction. A facial attack challenges the sufficiency of the jurisdictional allegations in a

complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge – which the State Defendants raise in this matter – "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (internal citation omitted). In resolving a factual attack on jurisdiction, the court "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039.

**B.     Motion to Dismiss for Failure to State a Claim**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the Complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in the complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. *See Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

## IV. DISCUSSION

### A. State Defendants' Motion to Dismiss

The State Defendants move to dismiss Ms. Baker's Second Amended Complaint on four grounds. First, they argue that the Eleventh Amendment precludes federal jurisdiction over the State of California, along with its entities and officials. Second, they argue that Defendant CHP is not a "person" subject to a civil rights lawsuit under § 1983, and because Defendants CHP Chief Fontana and CHP Chief Becher are sued in their "official capacities," they are not proper defendants for a § 1983 claim. Third, the State Defendants argue that Ms. Baker's claims are barred by the applicable two year statute of limitations. Fourth, the State Defendants argue that Ms. Baker makes no allegations demonstrating that she is the successor in interest to any survival claims related to the decedent. The Court finds the Eleventh Amendment sovereign immunity argument dispositive.

#### 1. Eleventh Amendment Immunity

In the Second Amended Complaint, Ms. Baker has named the State of California, the CHP, and CHP Chiefs Fotnana and Becher as defendants. The State Defendants contend that the Eleventh Amendment provides the State of California, the CHP, and all California officials named as defendants with sovereign immunity from Ms. Baker's claims. The Court agrees.

The Eleventh Amendment bars suits against a state or its instrumentalities by citizens of another state. U.S. Const. Amend. XI.[2] While the text of the Eleventh Amendment "expressly encompasses only suits brought against a State by citizens of another State . . . [the Supreme Court]

---

[2] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

long ago held that the Amendment bars suits against a State by citizens of that same State as well." *Papasan*, 478 U.S. at 276 (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Because Congress has not abrogated California's immunity as to civil rights claims under § 1983 or § 1985, and the State of California has not consented to suit on such claims, Ms. Baker's claims against the State of California are barred by the Eleventh Amendment. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ."). Consequently, Ms. Baker's claims against the State of California are subject to dismissal.

Moreover, it is well-established the Eleventh Amendment's prohibition applies not only to states, but also to state agencies. *See, e.g., Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (holding that claims against the California Department of Corrections were barred by state immunity); *Durning v. Citibank*, 950 F.2d 1419, 1422-23 (9th Cir. 1991) (noting that the Eleventh Amendment bars "federal courts from deciding virtually any case in which a state or the 'arm of a state' is a defendant"). "In the absence of a waiver by the state or a valid congressional override, '[u]nder the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.'" *Dittman*, 191 F.3d at 1025 (quoting *Mitchell v. L.A. Cmty. College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989)). Federal courts have consistently held that the CHP is an "arm of the state" for purposes of the Eleventh Amendment, and is thus cloaked in California's sovereign immunity. *See, e.g., McCain v. Cal. Highway Patrol*, 2011 WL 3439225, at *3 (E.D. Cal. Aug. 4, 2011); *Oremus v. Cal. Highway Patrol*, 2010 WL 2817072, at *1-2 (E.D. Cal. July 15, 2010); *May v. Cal. Highway Patrol*, 2010 WL 234868, at *1 (N.D. Cal. Jan. 14, 2010); *Townsend v. California*, 2010 WL 1644740, at *6 (E.D. Cal. Apr. 21, 2010); *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1232 (E.D. Cal. 2009). Accordingly, Ms. Baker's claims against CHP

9

must be dismissed.

Further, immunity under the Eleventh Amendment extends to suits against state officers acting in their official capacities because such suits target the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Halderman*, 465 U.S. at 101. Actions against state officials in their official capacities are treated as suits against the State, and are therefore generally barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't. of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (holding that for sovereign immunity purposes, a suit against state officials in their official capacities is treated as a suit against the state of California). This principle is applicable to lawsuits against CHP employees in their official capacities. *Vierria*, 644 F. Supp. 2d at 1232. Here, Plaintiff sued CHP Chiefs Fontana and Becher in their official capacities. SAC ¶¶ 11, 12. Accordingly, to the extent Plaintiff has asserted claims for relief against CHP Chiefs Fontana and Becher in their official capacities, they are shielded by California's sovereign immunity.

In sum, the Eleventh Amendment provides California, the CHP, and CHP Chiefs Fontana and Becher with sovereign immunity from Ms. Baker's civil rights claims, thereby divesting the Court of jurisdiction over them. Thereafter, the Court must **GRANT** the State Defendant's' Motion to Dismiss this action.

### B. Oakland Defendants' Motion to Dismiss

The Oakland Defendants urge the Court to dismiss Ms. Baker's Second Amended Complaint on three grounds. First, they argue that Ms. Baker is not an attorney and cannot represent the Estate of Diallo Sekou Neal, Sr. or the alleged successors in interest to Diallo Sekou Neal, Sr. Second, the Oakland Defendants argue that Ms. Baker's claims brought under § 1983 and § 1985 are time-barred. Third, the Oakland Defendants contend that even if Ms. Baker's claims were timely, they fail to state claims entitling her to relief and must be dismissed pursuant to Rule 12(b)(6).

1. Plaintiff's Standing

The Oakland Defendants first argue that because Ms. Baker is not an attorney, she lacks standing to represent any claims held by the decedent's estate or his successor(s)-in-interest.[3] Oak. Mot. at 4-5. In response to this challenge, on July 25, 2013, Plaintiff filed a letter requesting that the Court allow her to amend her pleading to remove all other plaintiffs except herself from the Second Amended Complaint. Dkt. No. 47.

As the Oakland Defendants correctly point out, because Plaintiff is not an attorney, she cannot assert claims on behalf of anyone but herself in this action. Civil L.R. 3-9; *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007). Further, to the extent that Plaintiff seeks to assert a survival action, Plaintiff must plead facts showing she is decedent's successor in interest. Cal. Civ. Proc. Code §§ 377.10, 377.11, 377.20, 377.30, 377.31. In particular, under California law, a person who seeks to commence an action as a decedent's successor in interest is required "to execute and file an affidavit or declaration" under penalty of perjury, stating: (1) the decedent's name; (2) the date and place of decedent's death; (3) that no proceedings are pending in California for the administration of the decedent's estate; (4) either that the declarant is the decedent's successor in interest or is authorized to act on behalf of the decedent's successor in interest; and (5) that no other person has a superior right to commence the action or proceeding for the declarant. Cal. Civ. Proc. Code § 377.32(a). Because Ms. Baker has not made these allegations in her SAC, she cannot assert claims against Defendants which are not personal in nature.

Reviewing the claims, Count One seeks to assert a § 1983 claim for violation of Diallo's Fourth Amendment rights. SAC at ¶ 58. Ms. Baker has not set forth any basis providing her standing to assert such a claim on her son's behalf. With respect to her § 1983 claim for violation of her Fourteenth Amendment rights to familial relations, the attendant *Monell* claim, and the § 1985 claim, the Court will analyze those claims as if asserted by Ms. Baker in her individual capacity.

---

[3] The California Defendants assert the same argument in their Motion. State Mot. at 8. Thus, the same analysis applies with respect to Ms. Baker's claims asserted against the State Defendants.

11

### 2. Statute of Limitations

The Oakland Defendants next argue that Ms. Baker's claims are subject to dismissal because they are outside the statute of limitations period applicable to such claims.

Claims brought pursuant to § 1983 and § 1985 must be filed within the time specified by the forum state's statute of limitations for personal injury torts. *Usher v. City of Los Angeles*, 828 F.2d 556, 558 (9th Cir. 1987); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711-12 (9th Cir. 1993) (noting that same limitations period applies to both § 1983 and § 1985 claims). California law sets a two year statute of limitations for personal injury claims – the most analogous cause of action to a civil rights violation. Cal. Civ. Code § 335.1; *see Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Beary v. City of Rohnert Park*, 1994 WL 478797, at * 5 (N.D. Cal. Aug. 29, 1994). "Although state law determines the length of the limitations period, federal law determines when a civil rights claims accrues." *Morales v. Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). Under federal law, a cause of action accrues when the "plaintiff knows or had reason to know" of the injury which is the basis of the action. *Id*.

In this case, Ms. Baker's § 1983 and § 1985 claims are based on the events leading up to decedent's death on October 10, 2005, and on allegations that OPD wrongfully investigated and fraudulently concealed information regarding the unidentified CHP motorcycle patrol officer's involvement in her son's death. As the Oakland Defendants' point out, based on her allegations, Ms. Baker was aware of the facts giving rise to her claims within months after her son's fatality. In October 2005, Plaintiff filed a Victim Compensation Claim with the Alameda District Attorney's Office, seeking to recover funeral expenses. Compl., Dkt. No. 1-1 at 33-35. Thereafter, in December 2005, Plaintiff received a report from Ralph Hernandez, a private investigator hired by a law firm who investigated the circumstances surrounding the accident. Compl., Dkt. No. 1-1 at 12-27. Ms. Baker also alleges that she went to CHP's Oakland office in December 2005. SAC ¶ 35.

Thereafter, on May 12, 2010, Ms. Baker wrote a letter to U.S. Attorney General Eric Holder, wherein she stated that, "The City of Oakland, Police Department did not conduct an investigation and told me my son's death was an accident." Compl., Dkt. No. 1-1 at 46. She further stated that,

"There was no investigation into any of the statements given by witnesses. There was no investigation of any of the circumstances of the case." *Id.*

In June 2010, Ms. Baker then filed a Complaint with the Oakland Police Department, wherein she stated:

> My son was killed, hit by a motorcycle police officer thrown from his own motorcycle causing his death. The Oakland Police Department did not conduct an investigation in spite of multiple witnesses who gave statements, they saw what happened. The Oakland Police covered up this crime leaving me and my son's children in shock and confusion.

Compl., Dkt. No. 1-1 at 48.

As these documents demonstrate, Ms. Baker knew or had reason to know of the facts giving rise to her claims as early as December 2005, or at the latest, in June 2010. In fact, on May 3, 2010, Ms. Baker wrote a letter to then-Attorney General Jerry Brown, wherein she stated:

> I recently contacted Attorney John Burris' office to ask again for help in the death of my son. I was shocked that although the law firm would still not take the case, this time they advised me to consult an attorney as soon as possible before the Statute of Limitations expires.

Compl., Dkt. No. 1-1 at 43. Thus, Ms. Baker was advised that the limitations period on her claims was about to expire. As indicated above, Ms. Baker filed this lawsuit in January 2013. Even assuming that she did not discover the facts underlying her claims until June 2010, this still places her claims more than six months outside the two-year limitations period. While Ms. Baker has requested that the Court equitably toll the limitations period, she has not presented any persuasive reasons supporting this request. Accordingly, the Court agrees with the Oakland Defendants that Ms. Baker's claims are time-barred and subject to dismissal.

        3.    <u>Plaintiff Has Failed to Plead Actionable Claims Against the Oakland Defendants</u>

The Oakland Defendants argue that, even if Ms. Baker's claims are timely, Plaintiff has failed to allege facts to support essential elements of her § 1983 and § 1985 claims. Oak. Def. Mot. at 7-9.

In her Second Claim, Ms. Baker alleges that, as a result of the Defendants' use of force, she has been deprived of the right to enjoy continuing family relations with Diallo, in violation of the Fourteenth Amendment.

13

Parents of a person killed by law enforcement officers may assert a substantive due process claim under the Fourteenth Amendment based on deprivation of the liberty interest arising out of familial relations. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998); *see also Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("This Circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children."). However, the Fourteenth Amendment inquiry is different from the "objective reasonableness" standard used in the Fourth Amendment excessive force claims. *Smith-Downs v. City of Stockton*, 2012 WL 671932, at *6 (E.D. Cal. Feb. 29, 2012). Under the Fourteenth Amendment, "only the official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The threshold question the Court must address in such cases is "whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998).

In determining whether police conduct "shocks the conscience," courts use two standards of culpability: "deliberate indifference" and "purpose to harm." *Porter*, 546 F.3d at 1137. The deliberate indifference standard applies "[w]here actual deliberation is practical." *Wilkinson*, 610 F.3d at 554. The more demanding standard of "purpose to harm" applies "where a law enforcement officer makes a snap judgment because of an escalating situation." *Id.* In that scenario, the proper inquiry is whether the police officer "acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

Here, Ms. Baker has not set forth any allegations indicating that any Oakland Police officer had any role in the accident resulting in Diallo's death; rather, Ms. Baker alleges that a CHP officer chased and struck Diallo. Thus, there is no behavior by any Oakland officer that could be found to shock the conscious and thereby support a Fourteenth Amendment claim. Ms. Baker's § 1983 claim for violation of the Fourteenth Amendment must therefore be dismissed.

In her third claim, Ms. Baker asserts a § 1983 claim against the City of Oakland. SAC ¶¶ 6-62. A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or

14

custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. *Plumeau v. School Dist. # 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). Thus, a plaintiff in a § 1983 case must provide evidence of a policy that resulted in the deprivation of the plaintiff's civil rights, and must show that an individual officer *acting pursuant to that policy* inflicted constitutional harm on the plaintiff. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). Here, Ms. Baker has not set forth any allegations that any Oakland Police officer was acting pursuant to a policy that resulted in a deprivation of her constitutional rights. Thus, Ms. Baker's § 1983 claims against Oakland are subject to dismissal.

Ms. Baker also alleges that Defendants actions violated 42 U.S.C. § 1985. Presumably, she brings this claim under § 1985(3), which protects against the deprivation of rights and privileges. Under § 1985(3), a conspiracy to deprive another person of rights and privileges occurs when:

> [T]wo or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws.

42 U.S.C. § 1985(3).

"A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (citations omitted). Here, Ms. Baker has failed to plead any facts regarding a conspiracy between any of the Defendants. Further, because Ms. Baker has failed to plead an actionable § 1983 claim for violation of a protected right, her § 1985 claim fails, as well. *Thorton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir.

15

2005) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.") (quoting *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989)). Accordingly, Ms. Baker's § 1985 claim is subject to dismissal.

**C.  SUMMARY**

In sum, Ms. Baker's Second Amended Complaint fails to state actionable claims against the State and Oakland Defendants. Ms. Baker's claims against the State Defendants are barred by the Eleventh Amendment and must be dismissed because the Court lacks jurisdiction over them. Ms. Baker's claims against the Oakland Defendants are barred because she filed them outside the two-year statute of limitations period. Further, Ms. Baker lacks standing to assert claims on behalf of anyone but herself and has failed to plead facts as to essential elements of her § 1983 and § 1985 claims. Because Ms. Baker has had several attempts to plead her claims, and because it does not appear that she can cure the jurisdictional and pleading defects identified above, the Court declines to grant leave for any further amendments. The Court will therefore dismiss Ms. Baker's case with prejudice.

**V.  CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the State Defendants' and the Oakland Defendants' Motions to Dismiss Ms. Baker's Second Amended Complaint. (Dkt. Nos. 36, 37.) Dismissal is **WITH PREJUDICE**. The Clerk of Court is instructed to close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 13, 2013

Maria-Elena James
United States Magistrate Judge